UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CHYREL A. DAVIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO. 1:06-cv-1469-WTL-TAB |
| ) | |
| PETE GEREN, Acting Secretary, ) | |
| Department of the Army (National Guard ) | |
| Bureau), et al., ) | |
| ) | |
| Defendants. ) | |

**ENTRY ON DEFENDANTS' MOTION TO VACATE *IN FORMA PAUPERIS* STATUS AND TO DISMISS**

This cause is before the Court on the Defendants' Joint Motion to Vacate the Plaintiff's *In Forma Pauperis* Status and to Dismiss the Complaint. The motion is fully briefed, and the Court has held an evidentiary hearing and received the parties' post-hearing submissions. Having carefully considered the relevant evidence and the arguments of the parties, the Court, being duly advised, hereby **GRANTS IN PART AND DENIES IN PART** the Defendants' motion for the reasons set forth below.

When Plaintiff Chyrel Davis, acting *pro se*, came to the Clerk's office to file her complaint in this case on October 5, 2006, she did not have the $350.00 filing fee with her. She was given a copy of AO Form 240, which is entitled Application to Proceed Without Prepayment of Fees and Affidavit (hereinafter "the Form"), which she completed and submitted for consideration. Her answers on the Form were incorrect in several respects, as explained in more detail below. During the discovery process, the Defendants discovered the discrepancies between Ms. Davis's actual financial situation and her answers on the Form. The Defendants then filed the instant motion seeking to vacate Ms. Davis's *in forma pauperis* status and asking for dismissal of this case

pursuant to 28 U.S.C. § 1915(e)(2)(A), which provides with regard to a person who has moved to proceed without prepayment of fees or costs that "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the allegation of poverty is untrue."

     As an initial matter, the Court notes that this statute cannot possibly be applied literally; if it were, then every time such a petition was denied because the plaintiff was not, in fact, impoverished in the judgment of the court, the case would have to be dismissed because the plaintiff would have made an allegation of poverty that was "untrue," in the sense that it was incorrect. *See* Black's Law Dictionary (7th ed.) (defining "untrue" as "not correct, inaccurate"). Such a literal application of the statute would be particularly unjust in light of the fact that there are no mandatory rules, or even guidelines, for determining "poverty" in this context–no chart that a plaintiff can check to determine whether he or she is, in fact, entitled to proceed without prepayment of fees–and therefore a plaintiff would have no way of knowing whether his or her financial situation constituted "poverty" or not. Indeed, not only does the statute fail to define the word "poverty" or provide courts any guidance with regard to making a determination of "poverty," but the use of the word "poverty" in subsection e(2)(A) seems to come out of nowhere, as it is not used anywhere else in § 1915. The Form also does not use the word "poverty," but rather asks the applicant to declare that he or she is "unable to pay the costs of these proceedings." Inasmuch as plenty of families who are not "impoverished" might still feel as if they are unable to come up with $350.00 to pay a filing fee, a person filling out the Form might not realize that he or she is "alleging poverty."

     So the statute cannot be applied literally, but that is irrelevant to the Defendants' main

position, which is that Ms. Davis "has abused a system designed to assist truly indigent litigants" and "attempted to make a mockery of the *in forma pauperis* process," and that plaintiffs like her "are the very reason 28 U.S.C. § 1915(e)(2)(A) is needed and was enacted by Congress–to prevent plaintiffs who are able to pay the costs of their legal proceedings from making false allegations of poverty to avoid paying such costs." USA's Post-hearing Brief at 1-2; *see also* Indiana's Post-hearing Brief at 1 ("By her misrepresentations to the Court, Davis hid her assets and income, and essentially perpetrated a fraud on the Court."). If, as the Defendants assert, Ms. Davis intentionally misrepresented her assets and income on the Form in order to avoid paying the filing fee, then under any reading of the statute dismissal would be mandated–and imminently just. However, having heard the lengthy testimony of Ms. Davis, as well as that of her mother, Millie Davis, and having had the opportunity to observe their demeanor and their credibility, the Court respectfully disagrees with the Defendants' assessment of the situation. To the contrary, the Court finds that Ms. Davis did not intentionally fill out the Form incorrectly, but rather filled it out to the best of her ability given her mental state at the time.

The Court finds that the testimony of Ms. Davis and her mother established that due to Ms. Davis's fragile mental state she is now (and was in October 2006) largely dependent on her seventy-seven-year-old mother. She lives with her mother, and while she contributes some money to groceries and to the utility bills for the house in which they live, the two have no particular agreement with regard to how much or how often those contributions are. Instead, the monthly social security payments that she receives are co-mingled with her mother's funds, and essentially Ms. Davis buys what she needs using those funds without much regard to whether the money she is spending belongs to her or her mother. The two of them have joint accounts so

that Ms. Davis will have access to them in the event that her mother dies or is incapacitated.

Ms. Davis testified that on the day she filed her complaint and filled out the Form she was taking several medications for depression and anxiety and also was feeling physically ill. To paraphrase her testimony, due to her confused mental state, she believed (incorrectly) that her complaint had to be filed that day and she awoke from a nap in a panic because she had so little time before the Clerk's office closed for the day. She felt "too out of it" to drive, so her mother drove her downtown to the courthouse. She arrived at the Clerk's office as it was closing and had not thought to bring any money with her, so she was unable to pay the filing fee and instead filled out the Form. Given her anxious emotional state and the press of time–the court's records indicate that the Form was filed at 5:07 p.m., after the Clerk's office had closed for the day–the fact that Ms. Davis did not fill out the Form properly is not surprising.

When questioned about her incorrect answers at the hearing, Ms. Davis gave the following explanations:

- She answered "no" to the question of whether she had received any money from "[d]isability or workers compensation payments," when in fact she receives monthly social security disability payments of approximately $1300.00, because she thought the question was referring to disability payments from her former employer, which she was seeking but was not receiving; she did not realize that the question also encompassed her social security disability payments.

- She answered "no" when asked if she had any "cash or checking or savings accounts" when she did, in fact, have several bank accounts with significant balances that were held either in her own name or jointly with her mother, because

4

        the money in those accounts belonged to her mother; any money that she received she spent on food and other personal needs.

- She answered "no" to the question of whether she owned "any real estate, stocks, bonds, securities, other financial instruments, automobiles or any other thing of value," when in fact she is the registered owner of three automobiles because she does not consider herself the owner of those vehicles. Two of them were purchased by her mother and, like the bank accounts, are in Ms. Davis's name in case something happens to her mother; Ms. Davis purchased the third one with money given to her by her uncle, who asked her to make the purchase for her nephew, who will get possession of the car when he finishes his education. In addition, she did not understand that the question also applied to her retirement account from her former federal employment, which had a balance of approximately $28,000.

Ms. Davis's answers regarding her bank accounts and the automobiles were corroborated by the testimony of Ms. Davis's mother. The Court finds their testimony to be credible, especially in light of the fact that Ms. Davis answered "yes" to the catch-all question on the Form which asked whether she had received money from "[a]ny other sources."[1] She did not provide any information regarding those other sources, despite the fact that the Form instructed, "[i]f the answer to any of the above is "Yes," describe, on the following page, each source of money and state the amount received and what you expect you will continue to receive," an omission she explained by her

---

[1] The Defendants do not explain why they believe that a person who was trying to obtain *in forma pauperis* status fraudulently would indicate on the Form that she had additional sources of income.

mental state. However, she testified that when she answered "yes" to the question, she did so because she realized that she had social security payments, her retirement account, and the money she received from her mother, none of which were accounted for by her other answers on the Form.

Based upon the testimony at the hearing, the Court determines that Ms. Davis did not intentionally fail to disclose assets on the Form in order to obtain a waiver of the prepayment of her filing fee.[2] The plain language of the statute does not require that the untrue allegation of poverty be intentional, however, so this finding does not end the inquiry. In fact, it is unclear under what circumstances an untrue allegation of poverty leads to dismissal. The Defendants, citing *Thomas v. General Motors Acceptance Corp.*, 288 F.3d 305 (7th Cir. 2002), and some district court cases, suggest that any untrue allegation of poverty mandates dismissal. It is true that the court in *Thomas* made the blanket statement that "[b]ecause the allegation of poverty was false, the suit had to be dismissed; the judge had no choice." *Id.* at 306. That statement was dicta, however, because the issue before the court was not whether the judge appropriately dismissed the case, but whether it was appropriate to dismiss it with prejudice. Unlike this case, *Thomas* involved what the district court termed an "egregious lie" by the plaintiff. Further, as already discussed, the mere fact that a plaintiff claims to be impoverished when in fact he or she is not is not sufficient, or else

---

[2]The Defendants point to Ms. Davis's high level of education (she has a master's degree) and the fact that she was able to run errands earlier on the day that she filed her complaint as evidence that she was capable of filling the Form out properly and intentionally failed to do so. This argument ignores Ms. Davis's testimony that she was feeling extremely anxious and rushed at the time she completed the Form and that she is, in fact, receiving social security disability benefits because she suffers from depression, anxiety, and panic attacks. The Defendants also point out that Ms. Davis did not have to complete the Form that day and that she could have chosen to take it home and fill it out at a more leisurely pace, but there is no evidence that Ms. Davis was aware of that fact.

every denial of an *in forma pauperis* petition would have to be accompanied by a dismissal.

Indeed, the court's holding in *Hrobowski v. Commonwealth Edison Co.*, 203 F.3d 445 (7th Cir. 2000) confirms that the dicta in *Thomas* is not a literal statement of the law.  In *Hrobowski*, the plaintiff filed an initial *in forma pauperis* petition that omitted certain information about his assets and income.  The court granted that petition, and even appointed counsel to represent him.  After his appointed counsel withdrew, *Hrobowski* filed another *in forma pauperis* petition and a new motion for appointment of counsel.  This petition also contained several omissions regarding his assets and income; however, based upon the information that was disclosed in the petition, the court denied it.  Hrobowski was never ordered to pay the filing fee, though, and the case proceeded to trial without him doing so.  During trial, the evidence revealed the omissions on his *in forma pauperis* petitions; the defendant then moved to dismiss the case pursuant to § 1915(e)(2).  The motion was granted; however, on appeal the court held that the statute did not apply to Hrobowski because at the time the motion to dismiss was made he was not proceeding *in forma pauperis*, inasmuch as his second petition had been denied.

So the fact that Ms. Davis's allegation of poverty was untrue does not, by itself, mandate dismissal of her case.  Neither does the mere fact that the petition contains incorrect information require dismissal;  if a plaintiff really is impoverished, the fact that he or she incorrectly listed the amount in a bank account would not make the allegation of poverty untrue.  *See Lee v. McDonald's Corp.,* 231 F.3d 456, 459 (8th Cir. 2000) (holding that the statute "does not mandate that the district court dismiss [a plaintiff's] claim if it finds that certain assertions in his affidavit are untrue; instead, it requires the district court to dismiss the claim if it finds that [the plaintiff] is not sufficiently poor to qualify for *in forma pauperis* status given the facts that are true").  This is because "[t]he purpose of this provision is to weed out the litigants who falsely

7

understate their net worth in order to obtain *in forma pauperis* status when they are not entitled to that status based on their true net worth." *Id.* (citations omitted).

It seems, then, that § 1915(e)(2) mandates dismissal only when the following occur: (1) the plaintiff is not actually impoverished; (2) the plaintiff's petition contains false information that supports a finding of poverty; and (3) the court grants the plaintiff's petition based upon the false information. Applying this standard to Ms. Davis, the Court first finds that Ms. Davis was not impoverished when she filed her petition. Given her social security disability income of $1300.00 per month, coupled with the fact that she has no dependents and virtually no fixed expenses, she was capable of paying the $350.00 filing fee.[3] As set forth above, Ms. Davis clearly gave answers on the Form that were incorrect. However, Ms. Davis also indicated on the Form that she had additional, unspecified sources of income. Without further information, the Form did not support a finding of poverty–in other words, from the Form as a whole, it was impossible to tell whether Ms. Davis was impoverished or not. In essence, the petition was granted in error, based upon obviously incomplete information, and it was that error, not Ms. Davis's incorrect answers, that led to her being granted *in forma pauperis* status. Errors occur from time to time, of course; Ms. Davis made errors on the Form, and a second error occurred when the petition was not either denied because it was incomplete or taken under advisement pending the receipt of the missing information. The Court finds it more likely than not that, given time to reflect while in a calmer state of mind, Ms. Davis would have corrected her omissions and provided correct information if

---

[3] The Court took judicial notice during the hearing of the fact that in 2006, the poverty guideline established by the Department of Health and Human Services for a person with no dependents was $9800.00. Ms. Davis's social security disability income was approximately 1.6 times that amount in 2006; in addition, she received substantial support from her mother, including housing and an automobile.

given the opportunity.  Therefore, the Court finds that under the circumstances of this case, dismissal is neither mandated nor appropriate.

For the reasons set forth below, the Defendants' motion is **GRANTED** to the extent that it seeks to vacate the granting of Ms. Davis's motion to proceed without the prepayment of fees. Ms. Davis shall pay the filing fee **within 21 days of the date of this Entry**.  The motion is **DENIED** to the extent that it seeks dismissal of this case.  If the parties will not be ready to proceed to trial in this case on May 11, 2009, they shall file a motion within the next 21 days seeking to continue the trial and requesting a status conference before the magistrate judge who is assigned to this case.

SO ORDERED:   02/11/2009

_William T. Lawrence_
Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification